Karl G. Popowics
GOODIN ABERNATHY, LLP
8900 Keystone Crossing, Suite 1100
Indianapolis, IN 46240
Phone: 317/843-2606
Fax: 317/574-3095
Email: Kpopowics@goodinabernathy.com

Attorney for Plaintiff

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2013 SEP 12 PM 1:45

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

# UNITED STATES DISTRICT COURT
for the
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHELE JOHNSON,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>HEART HOUSE, INC.<br><br>　　　　　Defendant. | Civil Action No.<br><br>1:13-cv-1454 TWP-MJD |

## COMPLAINT FOR DAMAGES & REQUEST FOR JURY TRIAL

Plaintiff, Michelle Johnson ("Plaintiff"), herein set forth the allegations of Plaintiff's Complaint against Defendant Heart House, Inc. ("Heart House").

1

## PRELIMINARY ALLEGATIONS

*BACKGROUND*

1) Plaintiff is an adult female who is currently a citizen of the State of Indiana.

2) Defendant is a non-profit domestic corporation that was incorporated under the laws of the State of Indiana in 1998 having a principal place of business as 6815 US 50, Aurora, Indiana.

3) On January 18, 2013, Defendant operated a facility at its principal place of business that provided both shelter to homeless individuals and low fee housing to employed individuals.

4) On January 18, 2013, Plaintiff and her minor daughter became residents of Defendant's facility and Plaintiff intended to stay at the facility because Plaintiff had no other home or place to return to.

5) On January 18, 2013, Ronald Eugene Shaw, Jr. ("Shaw") was a Caretaker at the facility operated by Defendant and Shaw lived at the facility.

6) As a Caretaker, Defendant considered Shaw staff.

7) As staff for Defendant, Shaw was involved with:

    a) Maintaining order;
    b) Validating resident illness;
    c) Changing room assignments;
    d) Granting permission to deviate from established routines;
    e) Assigning chores to resident;
    f) Providing emergency and safety instructions; and
    g) Providing warnings to residents for rule infractions.

8) As staff for Defendant, Shaw received consideration and/or compensation from Defendant in the form that:

    a) Defendant waived the collection of fees from Shaw to live on the premises;

        b)        Defendant provided Shaw with living quarters superior to residents;

        c)        Defendant provided Shaw with freedoms and benefits superior to that of residents.

9) After becoming a resident, Shaw subjected Plaintiff to unwelcomed sexual advances, lewd touching of Plaintiff's body, sexually suggestive remarks, requests for sexual favors, and regular and frequent statements that Plaintiff would be evicted if she did not follow orders.

10) On one occasion Shaw informed Plaintiff he knew she used the middle stall in the bathroom

11) On another occasion, on or about January 28, 2013, Shaw told Plaintiff that after lunch she needed to come and see him because he had a chore for her to perform.

12) After Plaintiff ate lunch she went to Shaw's room as directed and Shaw pulled her into his room, locked the door, and touched Plaintiff inappropriately.

13) On another occasion, near January 28, 2013, while Shaw was directing Plaintiff as to which cooler Plaintiff could use to secure and lock food for her daughter, Shaw looked at Plaintiff's breasts and said "They look really cold, I should warm those up for you."

14) When Plaintiff later went to retrieve the food, she was required to have the cooler unlocked by Shaw and during this time period Shaw grabbed Plaintiff and hugged her for an extended period and told her she smelled really good.

15) On another occasion, near January 28, 2013, Shaw informed Plaintiff she needed to help him assemble bunk beds in Shaw's room. Once in Shaw's room, Shaw informed Plaintiff she needed to go into his private bathroom and perform a sexual act on him.

16) Plaintiff refused, and Shaw then informed Plaintiff she should take her clothes off and get on his bed.

3

17) Plaintiff refused, and Shaw proceeded to grind himself against Plaintiff's clothed body.

18) During Shaw's interaction with Plaintiff, he frequently made statements indicating to Plaintiff how lucky she was to have a place like Defendant's facility and that if she did not follow orders, Plaintiff and her daughter would be evicted.

19) On or about January 30, 2013, Plaintiff met with a police officer with the Dearborn County Sheriff's Department, state of Indiana and voiced complaints concerning Shaw's behavior.

20) On or about January 31, 2013, the Dearborn County Sheriff's Department met with Shaw.

21) On or about February 1, 2013, Plaintiff was informed by Defendant that because of the complaints she had made toward Shaw, she could no longer stay at the facility.

22) On February 19, 2013, Shaw was criminally charged in Dearborn County, State of Indiana, with sexual battery and criminal confinement in connection with his activities toward Plaintiff.

23) On June 21, 2013, Shaw entered a negotiated plea agreement where he pled guilty to sexual battery.

## *JURISDICTION AND VENUE*

24) This action is brought against Defendant pursuant to 42 U.S.C. § 3604 which prohibits discrimination on the basis of sex and sexual harassment in housing, and 42 U.S.C. § 3617 which prohibits threatening or intimidating one who fails to comply with sexual demands.

25) Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FIRST COUNT
## CAUSE OF ACTION UNDER 42 U.S.C. § 3604

26) The allegations of rhetorical paragraphs 1 through 25 are incorporated herein by reference.

27) The facility operated by Defendant is a dwelling.

28) Shaw was a servant, employee, or agent of Defendant.

29) Shaw subjected Plaintiff to verbal and physical conduct of a sexual nature.

30) Shaw subjected Plaintiff to verbal and physical conduct of a sexual nature because of her sex as a female.

31) Shaw's conduct was unwelcomed.

32) Shaw's conduct was sufficiently severe and pervasive to alter the use and enjoyment of the facility by Plaintiff and created an abusive and hostile living environment, and constituted sexual harassment and discrimination.

33) Shaw's conduct caused Plaintiff mental anguish, pain and suffering, and emotional injury.

34) Pursuant to *respondeat superior* Defendant is liable to Plaintiff for Shaw's actions.

## SECOND COUNT
## CAUSE OF ACTION UNDER 42 U.S.C. § 3617

35) The allegations of rhetorical paragraphs 1 through 34 are incorporated herein by reference.

36) Plaintiff was a resident of Defendant's facility when she reported the unwelcomed conduct of Shaw to the Dearborn County Sheriff's Department.

5

37) Plaintiff's reporting of Shaw's conduct to the Dearborn County Sheriff's Department was a protected activity or right.

38) Defendant unlawfully interfered with Plaintiff's right to report Shaw's activity and retaliated against Plaintiff by forcing Plaintiff to leave the facility following the reporting of Shaw's actions.

## THIRD COUNT
## COMMON LAW *RESPONDEAT SUPERIOR*

39) The allegations of rhetorical paragraphs 1 through 38 are incorporated herein by reference.

40) Shaw was a servant, employee, or agent of Defendant.

41) Shaw was anointed and empowered by Defendant to maintain order, assign chores, maintain group behavior, provide infraction warnings to residents, and to deviate from routines.

42) Shaw used his status with Defendant to commit wrongful acts including sexual battery and confinement on and toward Plaintiff.

43) Because the wrongful acts originated in activities closely associated with Shaw's position and employment and agency relationship with Defendant, the wrongful acts fall within the scope of employment and Defendant is liable to Plaintiff pursuant to *Respondeat Superior*.

## FOURTH COUNT
## COMMON CARRIER EXCEPTION

44) The allegations of rhetorical paragraphs 1 through 43 are incorporated herein by reference.

45) Defendant operated a facility that was in part a homeless shelter.

6

46) Shaw was a servant, employee, or agent of Defendant.

47) Plaintiff was resident of Defendant's facility.

48) As a resident of the facility, Plaintiff ceded the power to ensure her safety and protection from Shaw to Defendant.

49) As a resident, Plaintiff surrendered to Defendant autonomy and control.

50) By virtue of Defendant's business, Defendant assumed a non-delegable duty under the Common Carrier Exception rendering it liable for injuries inflicted on Plaintiff by Shaw, regardless of whether Shaw's acts fell within the course of employment.

## FIFTH COUNT
## NEGLIGENT HIRING AND RETENTION

51) The allegations of rhetorical paragraphs 1 through 50 are incorporated herein by reference.

52) Many residents of Defendant's facility come to the facility in a vulnerable state.

53) Shaw was anointed and empowered by Defendant to maintain order, assign chores, maintain group behavior, provide infraction warnings to residents, and to deviate from routines.

54) Consequently, Shaw was in a unique position, to exploit the vulnerabilities of the residents.

55) Since Shaw was in a unique position, to exploit the vulnerabilities of the residents, Defendant had a duty to properly screen Shaw's background before empowering him as a Caretaker.

56) Similarly, once Defendant empowered Shaw as a Caretaker, Defendant had a duty to continue to monitor Shaw to determine if he should be retained as a Caretaker.

57) Defendant negligently breached its duties and as a result of its breach, Plaintiff sustained emotional injuries, mental pain, suffering, and was damaged.

## SIXTH COUNT
## FALSE IMPRISONMENT

58) The allegations of rhetorical paragraphs 1 through 57 are incorporated herein by reference.

59) On or about January 28, 2013, Shaw told Plaintiff that after lunch she needed to come and see him because he had a chore for her to perform.

60) After Plaintiff ate lunch, she went to Shaw's room as directed and Shaw pulled her into his room and locked the door.

61) Plaintiff did consent to being locked in Shaw's room.

62) By confining Plaintiff in his room, Shaw committed false imprisonment and Plaintiff suffered damages as a result of Shaw's false imprisonment.

63) Shaw committed the false imprisonment in, and as part of, the transaction of business for Defendant because Shaw was anointed and empowered by Defendant to assign chores to residents and he used this authority to induce Plaintiff to come to his room under the guise of assigning her a chore and then locked the door.

64) Because Shaw committed the false imprisonment as part of the transaction of business for Defendant, and because an employer/employee, principal/agent, and/or master/servant relationship existed between Shaw and Defendant, liability for the false imprisonment rests with Defendant.

## REQUESTS FOR RELIEF

Plaintiff is entitled to and hereby requests that this Court grant the following relief:

Count I: Judgment be entered in favor of Plaintiff against Defendant for her emotional damages, pain and suffering, mental anguish and attorney fees.

Count II: Judgment be entered in favor of Plaintiff against Defendant for her emotional damages, pain and suffering, mental anguish and attorney fees.

Count III: Judgment be entered in favor of Plaintiff against Defendant for her emotional damages, pain and suffering, and mental anguish.

Count IV: Judgment be entered in favor of Plaintiff against Defendant for her emotional damages, pain and suffering, and mental anguish.

Count V: Judgment be entered in favor of Plaintiff against Defendant for her emotional damages, pain and suffering, and mental anguish.

Count VI: Judgment be entered in favor of Plaintiff against Defendant for her emotional damages, pain and suffering, and mental anguish.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests that her Complaint and allegations against Defendant be resolved by a Jury Trial.

_____
Karl G. Popowics, Attorney for Plaintiff

Karl G. Popowics, Atty. No. 19527-49
GOODIN ABERNATHY, LLP
8900 Keystone Crossing, Suite 1100
Indianapolis, IN 46240
Phone: 317/843-2606
Fax: 317/574-3095
Email: Kpopowics@goodinabernathy.com